DOUGLAS BOISEN, APPELLEE, V. PETERSEN FLYING SERVICE, INC., A NEBRASKA CORPORATION, APPELLANT.
383 N.W.2d 29

Filed March 14, 1986.   No. 84-707.

Jerry C. Stirtz of Martin, Stirtz & Martin, for appellant.

Michael R. Snyder, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

SHANAHAN, J.

Douglas Boisen commenced an action for declaratory judgment, see Neb. Rev. Stat. §§ 25-21,149 et seq. (Reissue 1979), seeking determination that a postemployment covenant not to compete, contained in Boisen's employment contract with Petersen Flying Service, Inc., was invalid. We affirm the judgment of the district court for Kearney County declaring the postemployment restraint unenforceable.

The basic facts bearing upon disposition of Petersen Flying's

appeal are not disputed. When neither the terms of a contract nor facts and circumstances demonstrating the intent of the parties are disputed, construction of a contract is a question of law. See, *Bishop Cafeteria Co. v. Ford*, 177 Neb. 600, 129 N.W.2d 581 (1964); *Grantham v. General Tel. Co.*, 191 Neb. 21, 213 N.W.2d 439 (1973); *Don J. McMurray Co. v. Wiesman*, 199 Neb. 494, 260 N.W.2d 196 (1977). Regarding a question of law, this court has an obligation to reach its conclusion independent from the conclusion reached by a trial court. See, *Ranger Division v. Bayne*, 214 Neb. 251, 333 N.W.2d 891 (1983) (construction of federal regulations to determine whether, as a matter of law, absence of a disability waiver was an absolute defense to an applicant's claim concerning an employer's alleged discrimination against the physically disabled); *OB-GYN v. Blue Cross*, 219 Neb. 199, 361 N.W.2d 550 (1985) (declaratory judgment action to determine validity of a nonassignment provision in health care contracts).

Douglas Boisen, 35 years old and a lifetime resident of Kearney County, lived near Minden with his wife and children. Douglas, a farmer since 1971, formed a farming partnership in 1974, Boisen Farms, with his father. Douglas obtained a private pilot certificate in 1977. Charles O. Petersen, president and sole shareholder of Petersen Flying, was a flight instructor for Douglas in obtaining the private pilot certificate. The business of Petersen Flying, incorporated in 1976, consisted of aerial spraying for application of agricultural chemicals—herbicides and insecticides. Boisen Farms was one of Petersen Flying's customers.

In 1979 Douglas began training toward a commercial pilot certificate. Petersen again instructed Douglas and indicated an interest in Douglas' future employment by Petersen Flying as a spray pilot, after Douglas obtained his commercial pilot certificate. Douglas received a commercial pilot certificate in 1981 and arranged with Petersen for special instruction in flying a spray plane. Petersen supervised several low-altitude practice runs made in a Grumman "Ag-Cat," one of Petersen Flying's spray planes used in Douglas' efforts to develop skills as an aerial applicator. When Douglas became proficient in flying an Ag-Cat, Petersen, on behalf of Petersen Flying,

submitted to Douglas a written agreement denominated "Contract for Use of Aircraft, Employment as Pilot and Agreement Not to Compete." The submitted contract contained a provision:

It is expressly understood and agreed, that for the consideration provided herein by employer, employee agrees that in the event he does not enter the employment of employer, or in the event he does enter employment with employer, but later leaves such employment for any reason, whether at his own instance, or at the instance of the employer, then, in any of such events, employee agrees that he shall not enter any occupation or employment, whether working for someone else or as a self-employed person, as owner, operator, employee, salesman, representative, pilot, instructor, advisor or consultant in, with or to any business which is in competition with any business presently performed or performed at any time during the employment of employee, by Petersen Flying Service, Inc., employer herein, within a radius of 50 miles of Minden, Kearney County, Nebraska, for a period for 10 years from the date of this agreement, or from the date such employee shall leave the employment of employer, which ever is later.

Douglas and Petersen signed the agreement on July 6, 1982. After signing the agreement Douglas did some aerial spraying for Petersen Flying in 1982 and during the first few weeks of the "spraying season" in 1983. While employed by Petersen Flying, Douglas did not contact any of Petersen Flying's customers regarding aerial spraying, that is, did not solicit orders for spraying or make collections for chemicals applied by Petersen Flying. As a result of his growing up in Kearney County and acquaintance with other members of the farming community, Douglas knew the identity of some customers by location of their farms. For identification of sites to be sprayed, Douglas and other spray pilots of Petersen Flying were given names of customers immediately before spraying operations. Douglas' only on-the-job training, knowledge, or skill acquired related to operating the Ag-Cat, mixing .chemicals to be sprayed, and applying chemicals on fields of customers. Chemicals were

mixed according to the manufacturer's label on the container.

Late in 1983, Petersen Flying discharged Douglas from employment, claiming that Douglas never developed into a good spray pilot.

In his petition Douglas alleged:

The restraint purportedly imposed by [the employment contract] is unreasonable concerning the nature of employment or occupation purportedly prohibited, the area within which such employment or occupation is prohibited, and the length of time during which such employment or occupation if [sic] prohibited, and as such, the restraint does not correspond with the need, if any, for protecting the legitimate interests of [Petersen Flying].

By his petition Douglas prayed that the covenant not to compete, contained in the agreement of July 6, 1982, be "declared invalid and of no force or effect."

In its answer Petersen Flying claimed that the contract with Douglas constituted "a bargain by an assistant, servant or agent not to compete with his employer, after termination of employment, within such territory and during such time as may be reasonably necessary for the protection of the employer without imposing undue hardship on the employee." Petersen Flying also filed a cross-petition, alleging that the restrictive covenant was "valid and enforcable [sic] and should be enforced against [Douglas]" and praying that the restrictive covenant be determined valid and enforceable or "that in the event said Contract cannot be fully enforced, that the Court determine and reform the same to be equitable between the parties."

At trial Douglas testified he wanted to enter the aerial spraying business. As described by Charles Petersen, the aerial spraying of Petersen Flying was not fly-by-night. Petersen Flying owned six aircraft and obtained customers through "personal contact, word of mouth, advertising [and a] lot of hard work." Petersen testified that the aerial spraying business is a "flexible business and you go wherever the bugs are." Customer contact was initiated by a prospective customer, or, as Petersen explained, "[Y]ou wait for the farmer to call." Petersen Flying did "nothing" to retain customers from season

to season. The "price" charged for aerial spraying determined whether a customer stayed with Petersen Flying or went to one of its competitors in the area. Information about a competitor's price "generally" came from a prospective customer. Petersen Flying had no trade secrets. A customer list of Petersen Flying was nonexistent. Petersen acknowledged that Douglas, during employment with Petersen Flying, learned "no more" than Douglas would have learned from another engaged in the aerial spraying business. When asked about his reason for the postemployment restrictive covenant, Petersen responded: "The whole fact is that I've been in business in this area, why should I train somebody to go out and run me competition in the area that I have been developing."

The district court found the covenant not to compete was "unreasonable and unenforceable." The district court refused to modify the covenant, as requested by Petersen Flying, regarding the restrictions involving time and space.

Petersen Flying claims the district court erred in (1) finding that the restrictive covenant was unenforceable and (2) refusing to modify the covenant to provide enforceability.

> There are three general requirements relating to partial restraints of trade: First, is the restriction reasonable in the sense that it is not injurious to the public; second, is the restriction reasonable in the sense that it is no greater than is reasonably necessary to protect the employer in some legitimate interest; and, third, is the restriction reasonable in the sense that it is not unduly harsh and oppressive on the employee.

*Securities Acceptance Corp. v. Brown*, 171 Neb. 406, 417, 106 N.W.2d 456, 463 (1960).

Petersen Flying invokes the "equities" involved in the case before us and emphasizes that flying a spray plane is not Douglas' primary occupation, characterizing Douglas as "flying a spray plane more for the thrill of the helmet, the goggles, the roar of the engine and the white scarf trailing out of the open cockpit than for the living wage he would make to feed his family." Brief for Appellant at 11. In this manner Petersen Flying contends that Douglas' aerial spraying is an avocation, not a vocation, and suggests that a court should consider

several factors, indicated in *Philip G. Johnson & Co. v. Salmen*, 211 Neb. 123, 317 N.W.2d 900 (1982), regarding a "balancing test" applied in determining whether enforcement of a covenant not to compete would be unduly harsh and oppressive to an employee.

However, not every employer-employee relationship infuses validity and enforceability into a postemployment restraint on competition by a former employee. Before weighing the various factors pertinent to hardship on a promisor in a restrictive covenant and enforceability of such restraint, we reexamine some principles formulated concerning validity of a covenant not to compete. More fundamental than, or at least preliminary to, the "balancing test" found in *Philip G. Johnson & Co. v. Salmen, supra*, is the test embodied in the question, Is the restraint " ' "reasonably necessary to protect the employer in some legitimate interest" ' "? *Brewer v. Tracy*, 198 Neb. 503, 505, 253 N.W.2d 319, 321 (1977); *Diamond Match Div. of Diamond International Corp. v. Bernstein*, 196 Neb. 452, 243 N.W.2d 764 (1976); *Securities Acceptance Corp. v. Brown, supra*. See, also, Restatement (Second) of Contracts § 188(1)(a) (1981). Regarding a postemployment covenant not to compete, an employer has a legitimate business interest in protection against " 'competition by improper and unfair methods,' " but an employer is not entitled to enforcement of a restrictive covenant which merely protects the employer from " 'ordinary competition.' " *Diamond Match Div. of Diamond International Corp. v. Bernstein, supra* at 455, 243 N.W.2d at 766. "A restraint on the employee is illegal when its purpose is the prevention of competition, except when the methods of competition to be prevented are methods commonly regarded as improper and unfair." 6A A. Corbin, Corbin on Contracts § 1394 at 100 (1962).

To distinguish between "ordinary competition" and "unfair competition," courts and commentators have frequently focused on an employee's opportunity to appropriate the employer's goodwill by initiating personal contacts with the employer's customers. Where an employee has substantial personal contact with the employer's customers, develops goodwill with such customers, and siphons away the goodwill

under circumstances where the goodwill properly belongs to the employer, the employee's resultant competition is unfair, and the employer has a legitimate need for protection against the employee's competition. See *Dana F. Cole & Co. v. Byerly*, 211 Neb. 903, 320 N.W.2d 916 (1982). See, also, *Sidko Paper Company v. Aaron*, 465 Pa. 586, 351 A.2d 250, 254 (1976) (an employer "clearly has a protectible interest in customer goodwill"); 6A A. Corbin, *supra* (special justification for postemployment restriction exists "if a part of the employee's compensated service consists in the creation of the good will of customers and clients, a good will that is likely to follow the person of the employee himself"); Corbin on Contracts § 1391B at 573 (C. Kaufman ed. Supp. 1984) ("Some courts seem to overlook the fact that covenants against competition are imposed, not to protect the employer against ordinary competition, but only to protect against unfair siphoning away of the employer's good will"); Blake, *Employee Agreements Not to Compete*, 73 Harv. L. Rev. 625 (1960). Also, an employer has a legitimate need to curb or prevent competitive endeavors by a former employee who has acquired confidential information or trade secrets pertaining to the employer's business operations. See *Brewer v. Tracy, supra*. See, also, *Whitmyer Bros., Inc. v. Doyle, et al.*, 58 N.J. 25, 33, 274 A.2d 577, 581 (1971) (an employer has a "patently legitimate interest in protecting his trade secrets"); 6A A. Corbin, Corbin on Contracts § 1394 (1962). From the foregoing we glean that an objective of a covenant not to compete is prevention of an employee's competitive use of information or a relationship with a customer or client, which pertains peculiarly to the employer and has been acquired in the course of the employee's employment with the employer. See Blake, *supra* at 647.

On the other hand, "[p]ost-employment restraints are scrutinized with particular care," and "[a] line must be drawn between the general skills and knowledge of the trade and information that is peculiar to the employer's business." Restatement (Second) of Contracts § 188, Comment *g*. at 45 (1981). Ordinarily, an employer has no legitimate business interest in postemployment prevention of an employee's use of some general skill or training acquired while working for the

employer, although such on-the-job acquisition of general knowledge, skill, or facility may make the employee an effective competitor for the former employer. See Blake, *supra* at 652. See, also, 6A A. Corbin, *supra* § 1394. "An opportunity to develop good will which is no different from the opportunity any other like employee in the industry would have with some other firm is not traceable to the particular position and situation of the employer." Corbin on Contracts § 1391B at 574 (C. Kaufman ed. Supp. 1984).

Petersen Flying has not shown any special circumstance affecting a legitimate business interest to be protected by a covenant not to compete. Beyond general contact with members of the community, Douglas had no personal and business-based contact with a customer or prospective customer of Petersen Flying. Although Douglas' low-altitude flying over a customer's fields at times probably brought him within relative proximity to Petersen Flying's customers, such contact is not close customer contact likely to lead away customers from Petersen Flying or divert customers to any prospective aerial spraying business operated by Douglas. Douglas was not exposed to, and did not acquire, confidential information accumulated by Petersen Flying regarding its customers or potential customers. As acknowledged by Petersen, the on-the-job training and knowledge acquired by Douglas were no different from that which would have been received from another employer engaged in the business of aerial spraying. The nature of Douglas' services rendered during employment with Petersen Flying contained no inherent threat to Petersen Flying's relationship with its customers, who were generally known and accessible to anyone involved in the business of aerial spraying. Petersen Flying had no trade secrets for aerial spraying, such as a significantly different technique unknown to competitors or a unique and advantageous method to conduct an aerial spraying business. Reduced to its rudiments, Petersen Flying's objective in the covenant not to compete is prevention of prospective competition consequent to another aerial spraying business' serving agricultural customers and, perhaps, ultimately causing a reduction of revenue due to competitive prices or fewer customers, available

or served. A covenant not to compete, as a partial restraint of trade, is available to prevent unfair competition by a former employee but is not available to shield an employer against ordinary competition. Under the circumstances we conclude that the questioned covenant not to compete does not protect "some legitimate business interest" of Petersen Flying and is, therefore, invalid and unenforceable. Petersen Flying's argument that a "balancing test" should be applied in this case simply does not get off the ground.

Petersen Flying maintains, however, that a court should exercise equitable powers and modify the restrictions of the covenant in this case. If such power had been exercised in this case, Petersen Flying argues, the restrictive covenant should have been enforced as judicially modified. Without commenting on the question whether a court, if ever, has the power to modify a restrictive covenant which is too broad, see *Philip G. Johnson & Co. v. Salmen*, 211 Neb. 123, 317 N.W.2d 900 (1982), we dispose of Petersen Flying's last argument by reiterating that Petersen Flying is not entitled to avail itself of the restrictive covenant as protection against the threat of ordinary competition. The purpose or effect of eliminating or preventing ordinary competition invalidates the restrictive covenant in question. Consideration of propriety or availability of judicial modification concerning the covenant's restraints based on time and place becomes unnecessary on account of the questioned covenant's invalidity. See *Johanson v. Liberty Mutual Insurance Company*, 232 N.Y.S.2d 856, 860 (1962) (a restrictive covenant which protects only against ordinary competition is "unenforceable even though it is limited as to time and place"). See, also, Corbin on Contracts § 1391B at 573 (C. Kaufman ed. Supp. 1984) (if the purpose or effect of a restrictive covenant is only to restrain ordinary competition, such condition "absolutely invalidates" a restrictive covenant). Whatever a more narrow draft of the questioned covenant might have been or may be, thereby decreasing the limitation of time or space involved in the restriction under examination, is irrelevant. Any modification in diminution of the restrictions on time and space still pertains to a restriction on a form of competition against which Petersen Flying is not entitled to

protection.

The judgment of the district court is affirmed.

AFFIRMED.

KRIVOSHA, C.J., and BOSLAUGH, J., concur in the result.