STATE OF MAINE
PENOBSCOT, SS.

FILED AND ENTERED
SUPERIOR COURT

MAR 0 4 2002

PENOBSCOT COUNTY

SUPERIOR COURT
Docket No. CV-00-198

JLH - PEN- 3, 13-2002

Malcolm Cushing,                    )
      Plaintiff                    )
                       )
                       )
      v.                )     **DECISION AND JUDGMENT**
                       )
                       )
Edwin Berry et al.,                 )
      Defendants                 )

MAR 19 2002

Hearing on the complaint was held on December 12, 19 and 20, 2001. On each hearing date, all parties were present with counsel. After the trial was completed, the parties filed written argument, that the court has considered.[1]

The defendants owned a business, held as a proprietorship, called "Mid Coast Embroidery" (hereinafter, "MCE"). The principal activity of the business was to embroider hats, shirts and other articles of clothing. In 1999, primarily because of concerns for Edwin Berry's health, the defendants decided to try to sell the business. They then listed the business for sale with a local real estate agency. The listing broker was Douglas Erickson, who owned the listing agency. The plaintiff, a resident of Glenburn, had seen MCE's products for sale at a fair. In the fall of 1999, he

---

[1] The defendant correctly points out that as part of his post-trial filings, the plaintiff has improperly submitted material that was used during the trial but not admitted or even offered into evidence. Such a presentation invites imposition of sanctions. However, the defendant has not sought such sanctions, and in the absence of such a request, the court declines to take steps other than to view the plaintiff's written presentation warily.

1

visited the business at its location in Cushing. He then learned that the business was for sale. During the succeeding period of time that lasted perhaps for several months, the plaintiff contacted Erickson, reviewed a collection of various material relating to the business and, after paying earnest money of $2,000, inspected financial material relating to MCE's ongoing operation.

Erickson had drafted a proposed purchase and sale agreement for the business. *See* plaintiff's exhibit 30K. Most of the information included in the draft contract was provided by Edwin Berry ("Edwin"). One of the attachments to the proposed contract was entitled, "EXHIBIT B COVENANT NOT TO COMPETE." This proposed covenant would prohibit the defendant competing with the business sold to the plaintiffs within a thirty mile radius of Cushing. Erickson drafted this provision of the covenant because he believed that the plaintiff intended to retain the business in Cushing.

On November 22, 1999, the parties signed the purchase and sale agreement. In part, the agreement provides:

> The Buyer agrees to buy, and the Sellers agree to sell, the business known as MID COAST EMBROIDERY, located at 171 River Road, Cushing, Maine, including but not limited to, the inventory of the business (as Seller's cost), fixtures, equipment, furnishings, as delineated in Exhibit A, tangible and intangible, business phone numbers, good will, business name, and Covenant Not to Compete. This sale specifically excludes the real estate on or in which the subject business is located. At the time of closing, Sellers agree to execute a Covenant Not to Compete for the benefit of the Buyers which is attached hereto as Exhibit B.

As noted in this provision, two documents were attached to the agreement. The first (entitled Exhibit A) was a schedule of property. The second (Exhibit B) was the document entitled Covenant Not to Compete. The

document includes a signature line for "SELLER." Other than the Purchase and Sale Agreement itself, the Covenant Not to Compete was the only document that called for the separate signature of any of the parties. Even though all three parties signed the purchase and sale agreement,[2] the Covenant Not to Compete remained unsigned. Indeed, neither of the defendants ever signed the Covenant.[3]

At some point between November 22, 1999 (when the parties signed purchase and sale agreement) and March 28, 2000 (when the parties closed the transaction and the business actually sold), the plaintiff retained and consulted with an attorney. He engaged counsel because he felt that the proposed covenant not to compete was not sufficiently restrictive. As drafted and in the form appended to the purchase and sale agreement, the covenant would prohibit the defendants from engaging in certain conduct within a thirty mile radius of Cushing. The plaintiff's attorney, however, proposed to expand the scope of the prohibitions substantially: in a revised draft of the covenant, the plaintiff (through his attorney) sought to include language by which the defendants "will not usurp or take any of the customers/clients that have been served by Seller since the inception of

---

[2] The trial testimony revealed that the plaintiff views himself as one of the three owners of MCE. The other two putative owners are the plaintiff's wife and his wife's niece. Neither of them is a party to this action. Only the plaintiff himself is identified in the purchase and sale agreement as a buyer of the business. None of the parties has raised any issue regarding the joinder of any non-party, and the court therefore does not address that issue.

[3] The plaintiff argues that the evidence establishes that Edwin in fact signed the covenant. However, the trial record does not support that conclusion. Edwin testified that he did not sign the covenant at any time, and none of the parties was able to locate or produce a signed covenant. Even if the evidence indicates that Edwin provided deposition testimony that he did sign the covenant, the weight of evidence remains to the contrary.

3

said Business, and will refer all inquiries from said customers/clients to BUYER." *See* plaintiff's exhibit 30K.[4] Additionally, the revised covenant as redrafted by plaintiff's counsel included a provision that the defendants would be liable for attorney's fee incurred by the plaintiff in any efforts to enforce "this agreement."

The record establishes that prior to the March 28 closing, the plaintiff's attorney discussed the terms of the covenant with the defendants' attorney. The record is unclear whether the actual document drafted by the plaintiff's lawyer was forwarded to defendants' counsel. However, the defendants were fully aware that the plaintiff wanted to expand the scope of the covenant. The defendants did not agree to those terms, and the plaintiff was aware of that position. In a letter sent by fax on March 27 from the plaintiff's attorney to the loan officer involved in the plaintiff's financing arrangements (a copy of which was sent to the defendants' attorney), plaintiff's counsel wrote, "The Covenant Not to Compete may be revised by the Seller to delete the next to last paragraph. Mr. and Mrs. Berry will be discussing this with Malcolm Cushing at the closing. See the ____ _____." Defendant's exhibit 5 (partially unreadable due to poor quality photocopy). At the closing held the next day, none of the parties discussed the covenant not to compete; no mention was made of it; and the Covenant remained unsigned, *see* note 3.

In October 2000, the plaintiff filed this action against the defendants. In count 1, he alleges that the defendants "have breached the Contract

---

[4]Plaintiff's exhibit 30K includes the original Covenant Not to Compete as appended to the purchase and sale agreement. It also includes the revised proposed covenant, which was not created until some date after the parties executed the purchase and sale agreement.

with Malcolm Cushing by failing to perform as agreed." *See* complaint at ¶ 7. The plaintiff goes on to allege in count 1 that the defendants specifically breached the covenant not to compete and the contractual provision to provide good will. In counts 2 and 3, the plaintiff asserts claims of negligent and intentional infliction of emotional distress.

The plaintiff now argues that the defendants have committed breaches of several provisions of the purchase and sale agreement: the defendants' contractual obligation to transfer the business' inventory to him; their obligation to convey the business' good will; and the covenant not to compete.

As part of the pretrial discovery process in this case, the defendants propounded interrogatories to the plaintiff. In one of the interrogatories, the plaintiff was asked to "state in detail each and every fact that forms the basis of, supports or is consistent with each and every allegation and cause of action contained in the Complaint." In his response -- which, of course, was signed under oath -- ,*see* M.R.Civ.P. 33(a), the plaintiff asserted only that the defendants violated the covenant not to compete. *See* defendant's exhibit 5 at ¶ 3. The plaintiff did not identify any other provisions of the contract that, in his view, were breached by the defendants, and he did not refer to any factual data or evidence that would support a claim other than one for breach of that covenant. In this way, the plaintiff has disclaimed any factual basis for his contract claim other than a breach of the covenant not to compete. In other words, he has affirmatively defined the scope of his claim to go no further than the covenant not to compete. Accordingly, the court declines to consider any liability claim beyond the plaintiff's contention that the defendants

violated the covenant not to compete.

> "To establish a legally binding agreement the parties must have mutually assented to be bound by all its material terms; the assent must be manifested in the contract, either expressly or impliedly; and the contract must be sufficiently definite to enable the court to determine its exact meaning and fix exactly the legal liabilities of the parties." . . .For a contract to be enforceable, "the parties thereto must have a distinct and common intention which is communicated by each party to the other."

*Searles v. Trustees of St. Joseph's College*, 695 A.2d 1206, 1211 (Me. 1997) (citations omitted). *See also Akerley v. Lammi*, 217 A.2d 396, 398 (Me. 1966) (". . .the formation of a contract requires a meeting of the minds."). The issue of whether there is a meeting of the minds is one of fact. *June Roberts Agency, Inc. v. Ventures Properties, Inc.*, 676 A.2d 46, 48 (Me. 1996); *Akerley*, 217 A.2d at 398. "The existence of an agreement, involving as it does so intricately the conduct of the parties, is appropriately a question for the trier of fact." *Agway, Inc. v. Ernst*, 394 A.2d 774, 777 (Me. 1978).

Here, the court cannot find from the record evidence that the parties agreed to the terms of a covenant not to compete. The purchase and sale agreement called for the defendants to execute the draft covenant, appended to the contract as "exhibit B," at the time of the closing. However, the covenant was drafted by the defendant's real estate agent. As drafted, the covenant was limited in scope to a geographical area within a thirty mile radius of Cushing, which is where the defendant operated MCE. A geographical limitation is sometimes included in a covenant not to compete and, in fact, is one of the factors considered by a court when asked to determine the reasonableness and thus the enforceability of such

a provision. *See Brignull v. Albert*, 666 A.2d 82, 84 (Me. 1995); *but see*

*Chapman & Drake v. Harrington*, 545 A.2d 645, 648 (Me. 1988) (covenant not to compete found reasonable even in the absence of geographical restriction to its application).

The plaintiff testified that he always harbored an intention to relocate MCE to Glenburn, once he acquired the business. In his closing argument, he contends that he intended to agree to the provisions of Exhibit B, because the defendants had conducted some of their business under MCE within 30 miles of Cushing and that the non-compete clause would ensure that the defendants could not continue to engage customers in that geographical area. This argument, however, is not supported by the evidence. After (and perhaps before) the parties executed the purchase and sale agreement, the plaintiff was dissatisfied with the scope of the covenant because he felt it did not give him sufficient protection from the defendants' future business activities. This concern was a reasonable one because the defendants had conducted a material amount of business with customers beyond a 30 mile radius of Cushing.

Prompted by this concern, the plaintiff consulted with his attorney, who drafted a revised covenant. This new, proposed covenant was far broader in its reach than the one that the defendants' agent had drafted. In addition to foreclosing competitive practices occurring within the limited area centered in Cushing, the plaintiff proposed that the defendants "will not usurp or take any of the customers/clients that have been served by Seller [the defendant] since the inception of said Business, and will refer all inquiries from said customers/clients to BUYER [the plaintiff]." Additionally, the plaintiff's attorney included a completely new

term that would render the defendants liable for attorney's fees incurred by the plaintiffs in any attempts to enforce "the agreement."

The defendants rejected the proposed language that increased the restrictive effect of the covenant. Further, the plaintiff knew that this proposal was unacceptable to the defendants. As late as the day immediately prior to the March 28 closing, plaintiff's counsel gave notice that his proposed agreement "may be revised" by the defendants at the closing and that the parties would discuss this issue at that time. *See* defendant's exhibit 5.[5] Plaintiff's counsel sent a copy of this letter to the plaintiff himself. In fact, as it turned out, the parties did not discuss this issue or any other matter relating to the covenant not to compete. Thus, at the time of the closing, the plaintiff knew that he and the defendants did not agree to the terms of a non-compete agreement. However, the plaintiff did not raise the issue (as his attorney expected that he would do) and did not insist that the defendants execute a covenant not to compete.

It is also significant that when the parties executed the purchase and sale agreement, the terms of the covenant not to compete were segregated into a separate instrument. All of the other terms of their agreement were within the four corners of the contract itself.[6] The contract itself provided

---

[5]Plaintiff's counsel anticipated the possibility of a revision to the scope of the restriction imposed on the defendants' future business activities. There was no suggestion, however, that the plaintiff might be flexible on his proposal -- which was never accepted by the defendants -- that the defendants would be liable for the plaintiff's legal fees and expenses generated by an action to enforce "the agreement."

[6]The list of personal property to be conveyed to the plaintiff was included in a schedule attached to the contract. The disposition of that property, however, was included as one of the contractual terms.

that when the business was actually transferred to the plaintiff, then at that time the parties would enter into the agreement consisting of the covenant not to compete. In fact, the parties did not do so and, as is noted above, the plaintiff did not request or demand that the defendants sign an instrument setting out the provisions of such a covenant.

The plaintiff argues that the covenant not to compete, set out separately in Exhibit B, was merged into the contract and that its terms are enforceable even though the defendants did not sign the covenant as the purchase and sale agreement indicated they would do. This argument is undermined by the fact that the parties had not agreed to the terms of the covenant not to compete.

Under all of these circumstances, the court finds that the parties did not reach a meeting of the minds regarding the terms of a covenant not to compete. Rather, at most, in their purchase and sale agreement, the parties expressed an intention to enter into such an agreement. The parties' expression of that intention does not rise to the level of a valid contract. *See Zamore v. Whitten*, 395 A.2d 435, 440 (Me. 1978); *Forbes v. Wells Beach Casino, Inc.*, 307 A.2d 210, 216 (Me. 1973).

The plaintiff argues that the existence of the covenant is established by the financial structure of the parties' transaction. Under the terms of the purchase and sale agreement, a portion of the proceeds to be paid by the plaintiff to the defendants was designated as consideration for the covenant not to compete. Indeed, the defendants claimed this part of the proceeds in their income tax returns. Although this evidence lends some factual support to the plaintiff's argument, it is not persuasive to establish the existence of such an agreement. First, irrespective of whether the

9

plaintiff paid money to obtain a covenant not to compete, the parties never agreed to the terms of such an instrument. Consideration is an essential component of a contract; however, a contract also requires that the parties agree to terms. In the absence of such an agreement, there can be no contract.[7]

Second, although one or both defendants allocated $25,000 of the total purchase price to the covenant not to compete, that was done in anticipation that the parties would enter into that part of the agreement. An intention to enter into a contract, "even the terms of the contract are stated with definite specificity," is not sufficient to create a contract. *Zamore*, 395 A.2d at 440. Further, the inclusion of this $25,000 in the defendants' tax return does not constitute persuasive evidence because the return was prepared by someone other than either defendant. The tax preparer merely took the data from the purchase and sale agreement. Thus, this evidence adds nothing to the plaintiff's other observations and does not establish that the parties agreed to a covenant not to compete.

In counts 2 and 3 of the complaint, the plaintiff seeks recovery for negligent and intentional infliction of emotional distress. The plaintiff has not proven that he suffered from emotional distress of a magnitude sufficient to support such claims. *See Curtis v. Porter*, 2001 ME 158, ¶¶ 10, 20, 784 A.2d 18, 22, 26 (discussing IIED and NIED claims). For that

---

[7] The court does not address any claims that might have been available as relief to the plaintiff as part of this proceeding if he was found to have paid money for something he did not receive. Although the defendants have argued early and often that the parties did not agree to a covenant not to compete, the plaintiff has predicated his case on the existence of such a provision: he did not plead an alternative theory of relief, and he has not argued such a theory. Thus, there is no occasion for the court to consider any other remedies.

10

reason alone, and without reaching other issues raised by these counts of the complaint, the plaintiff has not established a basis for relief under these tort theories.

In light of the basis for the court's decision, it need not and does not reach the remaining arguments made by the defendants.

The entry shall be:

For the foregoing reasons, judgment is entered for the defendants. They are awarded their costs of court.

Dated:   February 28, 2002

_____
Justice, Maine Superior Court

1 1