STATE OF MAINE
CUMBERLAND, ss

BUSINESS AND CONSUMER COURT
BCD-CV-2017-22

ORKIN, LLC,

    Plaintiff

v.

**ORDER ON MOTION FOR TEMPORARY
RESTRAINING ORDER
and FOR PRELIMINARY INJUNCTION**

DOUGLAS MORSE,

    Defendant

Before the Court is Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction against the Defendant. The Complaint filed by Plaintiff alleges breach of contract (Count I) and misappropriation of trade secrets (Count II). Plaintiff is seeking to enforce a non-competition clause in two employment agreements that it claims are binding upon the Defendant. Plaintiff Orkin, LLC ("Orkin") is represented by Attorney Timothy O'Brien, and the Defendant Douglas Morse ("Mr. Morse") is represented by Attorneys Daniel Nuzzi and Connor Beatty. Oral argument on the motion was held on May 31, 2017. The Court has reviewed the parties' filings, the last of which was received June 16, 2017, and issues the following order granting the motion in part on Count I.

1

## STANDARD OF REVIEW

In order to obtain preliminary injunctive relief a Plaintiff must establish four factors: 1) Plaintiff has a likelihood of success on the merits; 2) Plaintiff will suffer irreparable injury if the injunction is not granted; 3) such injury outweighs any harm which granting the injunction would inflict upon the Defendant; and (iv) the public interest will not be adversely affected by granting the injunction. *Ingraham v. Univ. of Maine at Orono*, 441 A.2d 691, 693 (Me. 1982).

In Maine, non-competition agreements are "contrary to public policy and will be enforced only to the extent that they are reasonable..." *Lord v. Lord*, 454 A.2d 830, 834 (Me. 1983). In order to be enforceable, a non-compete provision in an employment contract must be limited in scope, and whether the agreement is reasonable is a question of law for the Court. *Chapman v. Drake*, 545 A.2d 645, 647, 648 (Me. 1988). The length of time that the provision is in effect must also be reasonable. *Brignull v. Albert*, 666 A.2d 82, 84 (Me. 1995).

## FINDINGS

Defendant Douglas Morse was employed by Plaintiff Orkin, LLC (Orkin) beginning in February of 2014. He signed an employment agreement dated February 4, 2014 (Exhibit 2 to Defendant's Opposition) which contains a non-competition agreement which is the subject of this motion and lawsuit. He received training from Orkin and began training as a "Start Technician" which was a seasonal position. On June 1, 2014 he was offered and accepted a new, year-round position as a "Route Manager." Plaintiff claims that at that time Defendant signed a second employment agreement (Exhibit 3 to

2

Def.'s Opp.) but Defendant denies that. The agreement contains a signature that purports to be Defendant's but he claims that it must have been forged by someone else.

The parties seem to agree that, while at Orkin, Mr. Morse was an outstanding employee in terms of sale and performance. However, beginning in 2016 he began to have some conflict with his supervisor at Orkin, Ron Winslow. He was written up twice by Mr. Winslow for allegedly being disrespectful toward co-workers. Mr. Morse disputes all the allegations made about the reasons for his termination by Orkin on January 14, 2017.

Mr. Morse was unemployed for seven weeks until he was hired by Terminix, a competitor to Orkin. Mr. Morse claims that it is common for employees who leave Orkin to go to work at Terminix. In early April of 2017 Mr. Morse received two letters from Orkin stating that he was violating the terms of his employment agreement.

The parties agree that while employed by Orkin he serviced customers in approximately 44 municipalities. According to Orkin, he had 171 accounts in this service area. Orkin also claims that he has been working for Terminix in this same service area, and that during a two-week period Orkin received 41 cancellations of service from the 171 accounts Mr. Morse previously serviced. Orkin also claims that Mr. Morse must be using an Orkin customer list to solicit and/or to perform services for former Orkin customers. Mr. Morse states that he was never given a comprehensive customer list by Orkin, and denies that he ever provided any Orkin customer list to Terminix. He also denies that he ever gave Terminix any Orkin pricing information, much less any "trade secrets."

3

The parties agree that Terminix and Orkin offer similar products and services and are in direct competition with each other. Mr. Morse claims that the prices charged his Orkin customers during his employment there were set by the company, and that any member of the public could easily learn the prices charged. He admits that he had some discretion to give discounts but had to do so within a range dictated by Orkin. Mr. Morse's position is that he has not reached out to his former Orkin customers, but concedes that if a former customer reaches out to him he tells them he now works for Terminix. He denies disparaging Orkin in any way or that he tries to convince them to switch to Terminix. He states that Orkin has been losing customers to Terminix throughout Maine in recent months, and not just in his former service area. His pay at Terminix is almost exclusively based on commissions, and he claims that he will lose significant compensation if he is barred from providing services throughout Maine, including in his former service area.

Orkin seems to concede that barring Mr. Morse from working in this industry anywhere in Maine would be unreasonable, and instead seeks to enforce the agreement only in his former service area.

The language in the two agreements is identical in pertinent part.[1] The language-in-common does not permit Mr. Morse, for a period of two years immediately following termination of his employment, to "Call upon any customer or customers of the Company for the purposes of soliciting, selling or performance any pest control, exterminating,

---

[1] While the Plaintiff claims Mr. Morse is bound by two agreements, as noted Mr. Morse claims he never signed the second contract. Plaintiff points out that the language of the two agreements are identical in terms of the non-competition requirements, and refers in its argument to "The Employment Agreement." The Court makes no determination in this Order as to whether the signature on the August 3, 2014 contract belongs to Mr. Morse. However, it is clear that both agreements state that the employee is bound to its terms "during the term of his/her employment, and for a period of two (2) years immediately following termination of his/her employment with the Company for any reason whatsoever..." The Court therefore does not reach the issue here of whether the second agreement is in effect.

4

fumigating or termite control service for the eradication or control of, without limitation, to rats, mice, roaches, bugs, vermin, termites, beetles or other insects, rodents or birds..." The agreements also prohibit Mr. Morse, during that same period, from "disclos(ing) to any person not employed by the Company any information concerning the business of the Company, its methods, systems, or the names of its customers." (Par. 5 of Employment Agreements dated February 3, 2014 and August 4, 2014).

The Court finds that the agreement is not ambiguous, and that the Defendant agreed to its terms when he signed it. The questions then are: whether there have been violations committed by Mr. Morse; if so, whether the provisions violated are enforceable under Maine law; and how findings on these issues affect the availability of preliminary injunctive relief on the two claims made.[2]

### Misappropriation of Trade Secrets

The Court agrees with the Defendant that the pricing information which Plaintiff claims was disclosed to Defendant's new employer do not constitute "trade secrets" under Maine law. 10 M.R.S. 1542(4). Plaintiff's Reply memorandum suggests that it is not really disputing Mr. Morse's claim that as a factual matter any potential customer could find out the kind and price of services offered by Orkin, and that no "trade secrets" were revealed. Instead, Plaintiff's Reply emphasizes that the loss claimed is in the form of "good will."

The Court concludes based on the record presented to it that there is no evidence that Plaintiff misappropriated any "trade secrets" from Orkin. Therefore, Plaintiff is

---

[2] The Court decided to look first to see if there is sufficient evidence in the record to find a violation of the agreement, and only then to reach the question of enforceability of the provision violated.

unlikely to prevail on the merits of Count II and is not entitled to preliminary injunctive relief on that Count.

### Breach of Contract

As noted previously, the Court finds that the contract entered into by Mr. Morse is not ambiguous, and that he agreed to be bound by at least the first agreement. As also noted previously, Plaintiff seems to concede that the geographic scope in the agreement is unreasonable, and it is not seeking enforcement of the agreement in "The Entire State of Maine" as its language plainly states. Plaintiff maintains, however, that under *Chapman & Drake v. Harrington*, 545 A.2d 645, 647-48 (Me. 1988) the non-competition agreement is enforceable against Mr. Morse if he took "for his own benefit the good will his employer paid him to help develop for the employer's business." *Id.* at 647. That case also refers to situations where an employee "pursues" former customers and whose names were on customer lists. *Id.* Plaintiff also cites language in *Roy v. Bolduc*, 34 A.2d 479 (Me. 1943) that an employer "can prevent an employee from using his trade or business secrets, and other confidential knowledge gained in the course of his employment, and from enticing away old customers...."

Defendant partially concedes that he has been working in violation of the terms of the agreement in that he has been engaged in pest control, fumigation or termite controls for former Orkin customers, and that he did so in his former service area. He insists, however, that he has not been soliciting customers, and that any former Orkin customers who have switched to Terminix likely did so to obtain the same services for lower prices.

The Court finds that there is insufficient evidence in the record before it to support a finding that Mr. Morse has solicited any former Orkin customers. This finding might not be completely necessary given statements made during oral argument by Mr. Morse's counsel that he agreed not to solicit customers from his former employer. However, Plaintiff's arguments suggest that they believe Mr. Morse is in fact, or must be, soliciting customers and so the Court will make findings based on the record before it.

Mr. Winslow claims in his first affidavit that over a two-week period Orkin received 41 cancellations of service from the 171 accounts previously serviced by Mr. Morse, but also states that "some" stated that they were going with Terminix because of lower prices. ¶30, 32 Affidavit 4/14/17. In his second affidavit dated May 3, 2017 he states that since the first affidavit an additional 16 customers left Orkin "because of Defendant and/or Terminix." The Court finds that this information is not specific or sufficient enough to support a conclusion that Mr. Morse is soliciting those customers, or that he appropriated a "customer list" from Orkin - particularly given Mr. Winslow's concession that "some" of them say they left Orkin for price reasons. There is in fact no evidence in the record that he ever had access to such a list. That makes this case distinguishable from the Defendant in *Chapman and Drake*, as well as the Defendant in *Everett Prescott, Inc. v. Ross*, 363 F. Supp. 2d 180, 192 (D. Me), amended 390 F. Supp. 2d 44 (D. Me. 2005).

There is, however, sufficient evidence on the record to find that Mr. Morse violated his employment agreement in that Plaintiff is likely to prevail on its claim that his departure from Orkin resulted in some customers leaving Orkin to go to Terminix; that is, that Mr. Morse took "good will his employer paid him to help develop" for

7

Orkin's business. *Chapman & Drake v. Harrington,* 545 A. 2d 645, 647 (Me. 1988). The Court is persuaded by the numbers presented in Mr. Winslow's affidavit. The Court must therefore address the question of whether prohibiting Mr. Morse from working in the same industry and in the same service area is reasonable as a matter of law.

After oral argument on the Motion, the Court invited counsel to submit further briefing on whether the Court should consider as a factor Mr. Morse's involuntary separation from Orkin. The parties disagree as to whether his firing was justified, but they do agree that his work performance was quite good in the sense that Orkin recognized his strong sales numbers. The issues seems to be centered on conflict with his supervisor, Mr. Winslow, who stated in his affidavit that Mr. Morse was unprofessional in his communications towards coworkers. Plaintiff in its post-argument brief attached certain discipline records, but it is difficult from them to know if his communication with employees is faulted because Mr. Morse was acting too much like a manager (insubordination is mentioned) or because he was actually verbally abusive to the employees. The Court concludes that Orkin had the right to terminate Mr. Morse for the reasons stated but agree with Defendant's characterization that it amounted to an issue of Mr. Morse's temperament impeding what they determined to be Orkin's "legitimate business interests" in spite of his strong sales numbers. (Defendant's 6/16/17 Memorandum pg. 4.)

There is no dispute that this was an involuntary termination, and that Mr. Morse was unemployed for a number of weeks before he found work with Terminix. The issue is whether those facts should matter to the determination of unenforceability. The parties' memoranda on how to consider, if at all, the fact of his involuntary termination lay out

8

the four different approaches taken by various jurisdictions. While Plaintiff is correct to say the Law Court has never relied upon termination as a factor, the District Court of Maine in *OfficeMax Inc. v. Sousa*, 773 F. Supp. 2d 190 (D. Me. 2011) stated, after reviewing various approaches, that "the safer approach is to consider the circumstances of the employee's termination as a factor in balancing the equities between the parties..." (citing *OfficeMax Inc. v. County Qwick Print, Inc.* 751 F. Supp. 2d 221, (D. Me. 2010).[3]

The Court concludes that Mr. Morse's involuntary termination under these circumstances should weigh against enforceability, particularly given the absence of evidence of solicitation by Mr. Morse. The Court also would note in this regard Orkin's concession that some of its customers followed Mr. Morse to Terminix due to pricing factors – in other words, that some likely left as the by-product of competition, and not as result of efforts by Mr. Morse. Maine law has emphasized its disfavor with these clauses if the only interest being protected is protection against competition. In addition, the Law Court has repeatedly stated that due to the potential for these clauses to restrict an employee's ability to make a living, the "covenants violate public policy and will be enforced only to the extent that they are reasonable and sweep no wider than necessary to protect the business interest in issue." *Chapman v. Drake v. Harrington*, 545 A.2d 645, 646-7 (Me. 1988) (quoting *Lord v. Lord*, 454 A. 830, 834 (Me. 1983)).

The Court concludes further that the territorial non-competition clause is not reasonable and therefore is unenforceable under the circumstances of Mr. Morse's termination. Balancing the equities between the parties as suggested by the First Circuit

---

[3] The Defendants made a "policy-based argument that a termination without cause renders a prior noncompete unenforceable" relying upon a Law Review article, "You're Fired!! And Don't Forget Your Non-Compete," 1 DePaul Bus. & Com. L.J. 1 (2002) for the proposition that the majority view is that discharge without cause vitiates an employee's territorial noncompete. 773 F. Supp. 2d 190, 208.

in *OfficeMax*, Orkin may legitimately prevent Mr. Morse from soliciting his former customers to buy services from Terminix,[4] but unduly restricting Mr. Morse from making a living under the circumstances of his termination is not a legitimate business interest. To be clear, the Court restricts this conclusion to his working in the field of pest control. The Court's order will not permit Mr. Morse to solicit Orkin's customers from his former service area; it simply permits him to work for Terminix in this service area performing pest control services as described in the agreement.

The entry will be:

1). Orkin's Motion for a Preliminary Injunction on Count II is DENIED.

2). Orkin's Motion for a Preliminary Injunction is GRANTED[5] in Part and DENIED in Part on Count I. Defendant Morse is preliminarily prohibited from soliciting former Orkin customers in his prior service area. Defendant Morse is preliminarily allowed to sell, or perform any pest control, exterminating, fumigating or termite control service for the eradication or control of, without limitation, to rats, mice, roaches, bugs, vermin, termites, beetles or other insects, rodents or birds in his former service area.

**This order is to be incorporated on the docket for this case by reference.**

6/28/17

**DATE**

**SUPERIOR COURT JUSTICE**
**BUSINESS AND CONSUMER**
**COURT**

---

[4] As noted previously, counsel for Mr. Morse agreed that he would refrain from soliciting Orkin customers.

[5] The Court does not address Defendant's other written arguments on why he believes injunctive relief is unavailable to Orkin as it is clear to the Court that Mr. Morse will not be harmed by this Order – he will be permitted to work for Terminix as he claims to have been working, namely in the field of pest control, in the same area, but without soliciting former customers.

Entered on the Docket: 6/28/17
Copies sent via Mail___ Electronically ✓

10

**Orkin LLC v. Douglas Morse**

**BCD-CV-17-22**

### Orkin, LLC
### Plaintiff

Counsel:                          Timothy O'Brien, Esq.
                                  Paige Streeter, Esq.
                                  62 Portland Road, Suite 17
                                  Kennebunk, ME  04043

### Douglas Morse
### Defendant

Counsel:                          Daniel Nuzzi,, Esq.
                                  Connor Beatty, Esq.
                                  184 Main Street
                                  PO Box 3070
                                  Lewiston, ME 04243-3070