BRAD J. MOORE, APPELLEE, V.
EGGERS CONSULTING COMPANY, INC., APPELLANT.
562 N.W.2d 534

Filed May 2, 1997.   No. S-95-663.

J Russell Derr, of Erickson & Sederstrom, P.C., for appellant.

Robert E. O'Connor, Jr., for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, and GERRARD, JJ., and LIVINGSTON, D.J.

LIVINGSTON, D.J.

This is an action based upon an employment agreement between employer Eggers Consulting Company, Inc. (Eggers), and employee Brad J. Moore in which Eggers claims the district court erred in finding a covenant not to compete between the parties was unenforceable and in granting summary judgment to Moore under the Nebraska Wage Payment and Collection Act.

## FACTS

Moore was employed by Eggers from May 1989 to August 18, 1992. Moore's job title was personnel recruiter, and his duties included solicitation of, consultation with, and placement of employee prospects. In August 1989, Moore was asked to sign an employment agreement, which applied retroactively from May 1989. The employment agreement defined the geographic area and time period in which employees agreed not to compete. The agreement defined the geographic area as the continental United States and the period of time restricted as 1 year. The area restricted was the general industry of data-processing personnel. At the time of this litigation, Moore was the sole proprietor of Regency Group, an executive recruiting firm in North Sioux City, South Dakota. With the Regency Group, Moore continues to place people with companies in the data-processing field.

On September 30, 1992, Moore sued Eggers for unpaid wages due in the amount of $16,343.72. This amount included a $1,500 bonus trip based on performance. Eggers counterclaimed, alleging that Moore had, inter alia, violated the terms of a covenant not to compete between the parties. Moore stated that in the year after he left Eggers, he contacted companies that he had dealt with while he was working for Eggers.

Eggers' counterclaim also included six other causes of action: interference with business relationships, breach of fiduciary duty, unfair competition, unfair and deceptive trade practices, misappropriation of trade secrets, and replevin. As to the first through fifth and the seventh causes of action, Eggers prayed that Moore pay liquidated damages in the amount of $100 per day for each day Moore allegedly had broken and continued to break the provisions of the covenant not to compete.

Eggers' fourth cause of action, unfair and deceptive trade practices, alleged that Moore's actions amounted to unfair or deceptive acts or practices in the conduct of trade or commerce in violation of the Consumer Protection Act. Moore filed a demurrer to this cause of action, claiming that the Consumer Protection Act, specifically Neb. Rev. Stat. § 59-1607 (Reissue 1993), excepts the labor of a human being as a commodity or article of commerce. The court granted Moore's demurrer, finding that the Consumer Protection Act excludes the labor of human beings and, therefore, that Eggers' fourth cause of action did not state a cause of action.

Moore filed a motion for summary judgment as to Eggers' seventh cause of action, alleging breach of the covenant not to compete. The court sustained Moore's motion, finding that the provisions of the employment agreement were overbroad and should not be enforced.

The matter was called for trial on June 6, 1995. At the pretrial conference, counsel stipulated that the lost wage claims, if Moore was entitled to recover, amounted to $16,343.72. The parties then agreed that none of the seven counts of Eggers' counterclaim remained for determination by either a jury or the court. Moore then made an oral motion for summary judgment for "wages" under the Nebraska Wage Payment and Collection Act. Eggers' counsel waived the statutory 10-day notice regarding the summary judgment motion. The court found that the Nebraska Wage Payment and Collection Act voided the employment agreement's definition of wages because the agreement was against public policy. The district court awarded Moore $16,343.72 in unpaid wages and $4,085.93 in attorney fees.

This appeal was originally filed in the Nebraska Court of Appeals. We transferred it to this court's docket pursuant to our

power to regulate the caseloads of the Court of Appeals and this court.

## ASSIGNMENTS OF ERROR

Eggers claims the district court erred in (1) granting summary judgment in favor of Moore as to Eggers' cause of action seeking to enforce the covenant not to compete, (2) determining that Eggers did not state a cause of action pursuant to the Consumer Protection Act, (3) determining that the Nebraska Wage Payment and Collection Act was applicable to Moore's claim, and (4) awarding Moore unpaid wages.

## STANDARD OF REVIEW

In appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Stones v. Sears, Roebuck & Co.*, 251 Neb. 560, 558 N.W.2d 540 (1997); *Doe v. Golnick*, 251 Neb. 184, 556 N.W.2d 20 (1996); *Chism v. Campbell*, 250 Neb. 921, 553 N.W.2d 741 (1996); *Torrison v. Overman*, 250 Neb. 164, 549 N.W.2d 124 (1996); *Ford Motor Credit Co. v. All Ways, Inc.*, 249 Neb. 923, 546 N.W.2d 807 (1996). Statutory interpretation is a matter of law in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. *In re Estate of Muchemore, ante* p. 119, 560 N.W.2d 477 (1997); *Robertson v. School Dist. No. 17, ante* p. 103, 560 N.W.2d 469 (1997); *County of Seward v. Andelt*, 251 Neb. 713, 559 N.W.2d 465 (1997); *Van Ackeren v. Nebraska Bd. of Parole*, 251 Neb. 477, 558 N.W.2d 48 (1997).

In an appellate court's review of a ruling on a general demurrer, the court is required to accept as true all the facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the conclusions of the pleader. *Talbot v. Douglas County*, 249 Neb. 620, 544 N.W.2d 839 (1996); *Fox v. Metromail of Delaware*, 249 Neb. 610, 544 N.W.2d 833 (1996); *Proctor v. Minnesota Mut. Fire & Cas.*, 248 Neb. 289, 534 N.W.2d 326 (1995).

## ANALYSIS
### COVENANT NOT TO COMPETE

Eggers contends the district court erred in granting Moore's summary judgment motion as to Eggers' seventh cause of action in the counterclaim that alleges Moore violated the employment agreement's covenant not to compete. We disagree.

There are three questions asked to test the validity of a partial restraint on trade, such as a covenant not to compete:

> First, is the restriction reasonable in the sense that it is not injurious to the public? Second, is the restriction reasonable in the sense that it is no greater than is reasonably necessary to protect the employer in some legitimate interest? Third, is the restriction reasonable in the sense that it is not unduly harsh and oppressive on the employee?

*Chambers-Dobson, Inc. v. Squier*, 238 Neb. 748, 760, 472 N.W.2d 391, 399-400 (1991). Accord, *Vlasin v. Len Johnson & Co.*, 235 Neb. 450, 455 N.W.2d 772 (1990); *Polly v. Ray D. Hilderman & Co.*, 225 Neb. 662, 407 N.W.2d 751 (1987); *American Sec. Servs. v. Vodra*, 222 Neb. 480, 385 N.W.2d 73 (1986). Because there is no evidence that enforcement of the covenant not to compete will be injurious to the public, our inquiry focuses on whether the covenant is no greater than reasonably necessary to protect Eggers in a legitimate interest.

"An employer has a legitimate business interest in protection against a former employee's competition by improper and unfair means, but is not entitled to protection against ordinary competition from a former employee." *Vlasin v. Len Johnson & Co.*, 235 Neb. at 454, 455 N.W.2d at 776.

> "To distinguish between 'ordinary competition' and 'unfair competition,' courts and commentators have frequently focused on an employee's opportunity to appropriate the employer's goodwill by initiating personal contacts with the employer's customers. Where an employee has substantial personal contact with the employer's customers, develops goodwill with such customers, and siphons away the goodwill under circumstances where the goodwill properly belongs to the employer, the employee's resultant competition is unfair, and the employer has a legitimate need for protection against the employee's competition."

*Id.* (quoting *Boisen v. Petersen Flying Serv.*, 222 Neb. 239, 383 N.W.2d 29 (1986). Accord *Polly v. Ray D. Hilderman & Co., supra.*

The record reveals that Moore had substantial personal contact with Eggers' accounts, and consequently, he had the opportunity to appropriate customer goodwill. Therefore, Eggers had a legitimate business interest in customer goodwill that it is permitted to protect through the use of a legitimate covenant not to compete. See, *Vlasin v. Len Johnson & Co., supra; Polly v. Ray D. Hilderman & Co., supra.*

A finding that an employer had a legitimate business interest in customer goodwill does not automatically validate a covenant not to compete. See *Vlasin v. Len Johnson & Co., supra.* An employer does not ordinarily have a legitimate business interest in the postemployment preclusion of an employee's use of some general skill. *Chambers-Dobson, Inc. v. Squier, supra.* In the present case, Moore stated that Eggers did not provide a lot of materials for him and that his client information was obtained through his own diligence by reading business directories and telephone books in the library. Eggers does not have a legitimate business interest in precluding Moore's use of such general skills.

Having determined that Eggers has a legitimate interest in protecting customer goodwill, it remains necessary for us to determine if the covenant not to compete is no greater than reasonably necessary to protect this interest.

In the present case, the covenant not to compete contains the following restrictions:

> Employee covenants and agrees that he shall not directly or indirectly at any time for one year after termination of his employment for any reason:
>
> . . . .
>
> (b) Solicit or accept any business opportunity with any client of the employer with whom the employee worked or called upon or *has knowledge of* because of his employment by the employer during the last three (3) years of employment with the employer, where such business opportunity would be in any way competitive with the employer.

(c) Solicit or accept any business opportunity or arrange any placement in the area of executive and employee recruiting in the specific business area specified in Exhibit B.

(Emphasis supplied.) Exhibit B defines the business area as the continental United States.

A covenant not to compete may be valid only if " 'it restricts the former employee from working for or soliciting the former employer's clients or accounts with whom the former employee actually did business and has personal contact.' " *Vlasin v. Len Johnson & Co.*, 235 Neb. 450, 455, 455 N.W.2d 772, 776 (1990) (quoting *Polly v. Ray D. Hilderman & Co.*, 225 Neb. 662, 407 N.W.2d 751 (1987)). In the present case, the covenant not to compete seeks to restrict Moore from soliciting or working for any client of Eggers that Moore had knowledge of, including those that Moore did not personally work with and had never met. The covenant also seeks to protect Eggers against any type of competition from Moore, protection to which Eggers is not entitled. While we acknowledge that Eggers is protected against Moore's competition by improper and unfair means, it is not entitled to protection against ordinary competition. See *Vlasin v. Len Johnson & Co., supra.*

Further, the covenant not to compete prohibited Moore from working in employee recruitment anywhere in the continental United States. While employed with Eggers, Moore focused on placements in the Midwest. Eggers has proposed no rationale for such a broad geographical restriction. Without any explanation for the reason that the geographical restriction should include the continental United States, it is clear that preventing Moore from working anywhere in the continental United States is greater than is reasonably necessary to protect Eggers' legitimate business interest.

Because the covenant in this case attempts to prohibit Moore from entering into business with anyone he had knowledge of, rather than just Eggers' clients with whom Moore did business and had personal contact, and from working in employment recruitment anywhere in the continental United States, we find that the scope of the covenant is greater than is reasonably necessary to protect Eggers' legitimate interest and is, therefore, unreasonable and unenforceable.

Eggers contends that the employment agreement is a collection of severable provisions and, therefore, argues that even if the court finds some of the provisions of the employment contract unenforceable, it should sever the unenforceable provisions and enforce the remainder of the agreement. A review of the employment agreement reveals that it is not a compilation of severable provisions and that, in essence, Eggers is requesting we reform the employment agreement in order that it comply to the law. We decline to do so. It is " 'not the function of the courts to reform unreasonable covenants not to compete solely for the purpose of making them legally enforceable.' " *CAE Vanguard, Inc. v. Newman*, 246 Neb. 334, 339, 518 N.W.2d 652, 656 (1994) (quoting *Vlasin v. Len Johnson & Co., supra*). See, also, *Polly v. Ray D. Hilderman & Co., supra.*

### CONSUMER PROTECTION ACT

Eggers next assigns as error the district court's finding that Eggers failed to state a cause of action pursuant to the Consumer Protection Act (Act), Neb. Rev. Stat. § 59-1601 et seq. (Reissue 1993). Eggers claims that Moore was engaging in unfair practices in the conduct of his employment recruiting business in violation of the Act. Section 59-1602 of the Act prohibits unfair methods of competition and unfair or deceptive acts in the conduct of any trade or commerce. The district court sustained Moore's demurrer to this cause of action, finding that the Act specifically excepts the labor of a human being as a commodity or article of commerce.

In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Memorial Hosp. of Dodge Cty. v. Porter*, 251 Neb. 327, 557 N.W.2d 21 (1996); *Seevers v. Potter*, 248 Neb. 621, 537 N.W.2d 505 (1995); *Proctor v. Minnesota Mut. Fire & Cas.*, 248 Neb. 289, 534 N.W.2d 326 (1995). Section 59-1607 of the Act states that "[t]he labor of a human being shall not be a commodity or article of commerce." No interpretation is necessary to ascertain the meaning of this plain, direct, and unambiguous statute. Therefore, we agree with the district court and find that because

the Act excepts the labor of a human being, Eggers failed to state a cause of action in alleging that Moore violated the Act by engaging in his employment recruiting business.

NEBRASKA WAGE PAYMENT AND COLLECTION ACT

Eggers also claims as error the district court's determination that the Nebraska Wage Payment and Collection Act (Wage Act), Neb. Rev. Stat. § 48-1228 et seq. (Reissue 1993), was applicable to Moore's claim. Moore's petition alleged that Eggers failed and refused to pay him and that Eggers owed him a total of $16,343.72—$14,843.72 in total commissions and $1,500 for a bonus trip. These sums were not paid to Moore within 30 days after the regular payday, as agreed to between the parties. Before the district court, Moore made an oral motion for summary judgment as to his wage claim, and the parties agreed that if Moore was entitled to recover any wages, the amount would be $16,343.72. The employee agreement states in part that the

Employee shall be entitled only to those commissions which are due and payable on the final day of employment. A commission is due and payable upon collection of the fee from the client. No commission shall be paid to the Employee until such time as the client pays the commission and the Candidate begins employment. In the event of termination for any reason, the Employee shall not be entitled to any bonus, award, prize or other incentive payment which may be payable at any time after termination.

The Wage Act provides in part as follows:

Wages shall mean compensation for labor or services rendered by an employee, including fringe benefits, when previously agreed to and conditions stipulated have been met by the employee, whether the amount is determined on a time, task, fee, commission, or other basis. Wages shall include commissions on all orders delivered and all orders on file with the employer at the time of termination of employment less any orders returned or canceled at the time suit is filed.

§ 48-1229(4).

The statute clearly states that wages include commissions on all orders on file with the employer at the time of termination.

In contrast, the employment agreement states that employees receive commissions only after such time as the client pays the commission and the candidate begins employment.

The language of the statute is clear; wages include commission on orders on file with the employer at the time of termination of employment. Eggers cannot circumvent the statutory definition of wages through its employment agreement. If an act is prohibited by statute, an agreement in violation of the statute is void. See *Arthur v. Trindel*, 168 Neb. 429, 96 N.W.2d 208 (1959).

In the present case, Moore made placements during the months of July and August before leaving Eggers on August 18, 1992. The statute plainly defines the commission on these accounts as wages due to Moore. Because these commissions were on file with the employer on the date of August 18, 1992, the statute plainly defines them as wages due to Moore. We, therefore, agree with the district court and find that Moore is entitled to wages in the stipulated amount of $16,343.72.

Pursuant to § 48-1231, the district court awarded Moore 25 percent of his unpaid wages, the minimum attorney fees statutorily prescribed. Section 48-1231 provides in part as follows:

> An employee having a claim for wages which are not paid within thirty days of the regular payday designated or agreed upon may institute suit for such unpaid wages in the proper court. If an employee establishes a claim and secures judgment on the claim, such employee shall be entitled to recover (1) the full amount of the judgment and all costs of such suit and (2) if such employee has employed an attorney in the case, an amount for attorney's fees assessed by the court, which fees shall not be less than twenty-five percent of the unpaid wages. If the cause is taken to an appellate court and the plaintiff recovers a judgment, the appellate court shall tax as costs in the action, to be paid to the plaintiff, an additional amount for attorney's fees in such appellate court, which fees shall not be less than twenty-five percent of the unpaid wages.

In accordance with the statute, we uphold the trial court's award of attorney fees and costs and determine that costs in this action are to be paid by Eggers. A fee in excess of the statutory

minimum is warranted in this case. This appeal involves a clearly unreasonable covenant not to compete, as well as the defense of multiple counterclaims. Eggers' argument that the covenant not to compete was reasonable borders on meritless, and Eggers' request that the court reform the covenant not to compete is in direct conflict with established precedent of this court. The Legislature has made it clear that employers who unsuccessfully subject employees to litigation to recover wages owed are subject to being taxed fees and costs. Moore's attorney fees in the appellate court in the sum of $5,448, which is 33⅓ percent of the unpaid wages as previously determined by the trial court, are assessed against Eggers.

AFFIRMED.