Restatement (Second) of Torts,[18] provides: "One who by fraud, duress or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that he would otherwise have received is subject to liability to the other for loss of the inheritance or gift."

We expressly decline to opine on the interplay between § 30-3855(a) and § 774B of the Restatement. Even if we were to conclude that the statute did not prevent the adoption of a cause of action for intentional interference with an inheritance or gift, we would nevertheless decline to adopt this tort. Plaintiffs' second assignment of error is without merit.

*First National Bank as Party.*

For the sake of completeness, we note that in the last section of the brief for the appellees, they suggest that First National Bank of North Platte should be dismissed as a defendant because it has no interest in this suit. But because no cross-appeal was filed on this issue, we do not address the argument further.[19]

## CONCLUSION

The decision of the district court is affirmed.

AFFIRMED.

---

[18] Restatement (Second) of Torts § 774B at 58 (1979).

[19] Neb. Ct. R. § 2-109(D)(4) (rev. 2014).

---

JASON GAVER, APPELLEE, V. SCHNEIDER'S
O.K. TIRE CO., APPELLANT.
___ N.W.2d ___

Filed November 14, 2014.    No. S-13-1014.

1. **Declaratory Judgments: Appeal and Error.** When a declaratory judgment action presents a question of law, an appellate court decides the question independently of the conclusion reached by the trial court.
2. **Contracts: Appeal and Error.** The interpretation of a contract is a question of law, in connection with which an appellate court has an obligation to reach its conclusions independently of the determinations made by the court below.

3. **Contracts: Public Policy.** At common law, all contracts in restraint of trade are against public policy and void.

4. **Restrictive Covenants: Employer and Employee.** Covenants not to compete, as partial restraints of trade, are enforceable if the covenants are reasonable.

5. \_\_\_\_: \_\_\_\_. In determining whether a covenant not to compete is valid, a court considers whether the restriction is (1) reasonable in the sense that it is not injurious to the public, (2) not greater than is reasonably necessary to protect the employer in some legitimate interest, and (3) not unduly harsh and oppressive on the employee.

6. \_\_\_\_: \_\_\_\_. An employer has a legitimate business interest in protection against a former employee's competition by improper and unfair means, but is not entitled to protection against ordinary competition from a former employee.

7. **Restrictive Covenants: Employer and Employee: Goodwill: Words and Phrases.** To distinguish between ordinary competition and unfair competition, courts focus on an employee's opportunity to appropriate the employer's goodwill by initiating personal contacts with the employer's customers.

8. **Restrictive Covenants: Employer and Employee: Goodwill.** Where an employee has substantial personal contacts with the employer's customers, develops goodwill with such customers, and siphons away the goodwill under circumstances where the goodwill properly belongs to the employer, the employee's resultant competition is unfair and the employer has a legitimate need for protection against the employee's competition.

9. **Restrictive Covenants: Employer and Employee.** An employer has a legitimate need to curb or prevent competitive endeavors by a former employee who has acquired confidential information or trade secrets pertaining to the employer's business operations.

10. \_\_\_\_: \_\_\_\_. An employer does not ordinarily have a legitimate business interest in the postemployment preclusion of an employee's use of some general skill.

11. **Contracts.** The law does not look with favor upon restrictions against competition, and therefore, an agreement which limits the right of a person to engage in a business or occupation will be strictly construed.

12. **Restrictive Covenants: Courts: Reformation.** It is not the function of the courts to reform unreasonable covenants not to compete solely for the purpose of making them legally enforceable.

Appeal from the District Court for Platte County: Robert R. Steinke, Judge. Affirmed.

Ralph A. Froehlich, of Locher, Pavelka, Dostal, Braddy & Hammes, L.L.C., for appellant.

Stan A. Emerson, of Sipple, Hansen, Emerson, Schumacher & Klutman, for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Miller-Lerman, J.

## NATURE OF CASE

Jason Gaver, the appellee, was employed by Schneider's O.K. Tire Co. (Schneider's), the appellant, on two separate occasions, and on each occasion, Gaver signed a noncompete agreement. After Gaver's second employment relationship with Schneider's ended on July 23, 2012, he filed his amended complaint in the district court for Platte County seeking a declaratory judgment that the noncompete agreements were unenforceable. After a bench trial, the district court filed an order in which it determined that the scope of the noncompete agreements was greater than reasonably necessary to protect Schneider's against unfair competition and that therefore, the noncompete agreements were unreasonable and unenforceable. The district court entered declaratory judgment in favor of Gaver and against Schneider's. Schneider's appeals. We determine that the applicable noncompete agreement at issue in this case is greater than reasonably necessary to protect a legitimate interest of Schneider's, and therefore, we affirm the district court's determination that it is unreasonable and unenforceable.

## STATEMENT OF FACTS

Schneider's is a business located in Columbus, Nebraska that sells tires and services motor vehicles. Gaver was twice employed by Schneider's: from October 29, 2001, to September 18, 2006, and from February 25, 2008, to July 23, 2012. Gaver voluntarily ended his employment relationships with Schneider's.

In 1991, prior to Gaver's employment relationship with Schneider's, Schneider's had established a profit-sharing plan with the First National Bank of Omaha as the trustee. The plan was later transferred to another entity. The profit-sharing plan is not in the record, but the adoption agreement, titled "Adoption Agreement #001 Standardized Profit Sharing Plan (Paired Profit Sharing Plan)," is in the record.

On each occasion that Gaver was employed by Schneider's, Gaver and the president of Schneider's, Bruce Schneider, entered into almost identical noncompete agreements. The

agreements are freestanding documents, not provisions of the profit-sharing plan, and we make no comment on the propriety of such noncompete provisions in profit-sharing plans. Schneider's asked its employees to enter into the noncompete agreements as a condition of participating in the company's profit-sharing plan.

The first agreement was entered into on April 16, 2003, and it was drafted by Schneider's attorney. The second agreement was entered into on December 5, 2008, and it was drafted by Schneider's secretary and treasurer, using the 2003 agreement as a model. As set forth in more detail below, the noncompete agreements generally state that Gaver may not establish or open any business similar to Schneider's or "in any manner become interested, directly or indirectly, either as an owner, partner, agent, stockholder, officer or otherwise, in any such business or trade" within a 25-mile radius of Columbus for a period of 5 years after the termination of Gaver's employment.

Because Gaver's first term of employment ended on September 18, 2006, the 5-year term designated in the 2003 agreement has expired. Because Gaver's second term of employment ended on July 23, 2012, the 5-year term designated in the 2008 agreement is still in effect. The second noncompete agreement is therefore the applicable agreement and the subject of our analysis.

The 2008 agreement provided:

> This Agreement made and entered into this first day of December 5, 2008, by and between [Schneider's] of Columbus, Nebraska, hereinafter referred to as Employer, and . . . Gaver, hereinafter referred to as Employee.
>
> Whereas, Employee is employed, at will, by Employer under terms and conditions acceptable to both parties, and;
>
> Whereas, Employer has established a Profit Sharing Plan for the benefit of his Employees, and;
>
> Whereas, Employer desires to insure [sic] that the benefits of said Profit Sharing Plan are not used by Employee to the detriment of the Employer,

Now THEREFORE, in consideration of the benefits accruing to both parties as a result of the above-mentioned Profit Sharing Plan, the parties agree:

1. Employer shall maintain the Schneider's . . . Profit Sharing Plan under the terms and conditions as set forth in the Adoption Agreement #001, Standardized Profit Sharing Plan, (Paired Profit Sharing Plan) entered into by Employer on September 26, 1991.

*2. Employee shall not establish or open any trade business similar to the business owned and operated by Employer or in any manner become interested, directly or indirectly, either as an owner, partner, agent, stockholder, officer or otherwise, in any such business or trade, within* [a] *twenty-five mile radius of Columbus, Platte County, Nebraska from and after the date of the execution of this agreement and continuing for a period of five (5) years after the termination of the Employee's employment for whatever reason.*

THIS AGREEMENT IS NOT AND SHALL NOT BE INTERPRETED AS AN EMPLOYMENT AGREEMENT AND THIS AGREEMENT DOES NOT GIVE THE EMPLOYEE THE RIGHT TO BE EMPLOYED BY EMPLOYER.

*THIS AGREEMENT IS NOT AND SHALL NOT BE INTERPRETED AS A RESTRICTION ON EMPLOYEE'S RIGHT TO BE EMPLOYEED* [sic] *IN A TRADE OR BUSINESS SIMILAR TO THE TRADE AND BUSINESS OWNED AND OPERATED BY EMPLOYED* [sic].

(Emphasis supplied.)

It appears undisputed that Gaver received all the profit-sharing money he was due with respect to each period of employment.

Gaver filed his amended complaint on July 23, 2013, against Schneider's, seeking a declaratory judgment that the 2003 and 2008 noncompete agreements were unenforceable. Gaver alleged, inter alia, that he "desires to operate a business consisting of buying and selling new and used tires, installing them and servicing them in all aspects of tire related issues

and to do general maintenance on vehicles." In paragraph 6 of his amended complaint, Gaver alleged:

> The Non-Compete Agreements . . . are inequitable, ambiguous, vague, lack consideration, is [sic] in contravention of the laws of the State of Nebraska, are not customer specific, are overly broad and provide excessive restrictions as to both time and area within which competition by [Gaver] is prohibited, are unreasonable and unenforceable.

Accordingly, Gaver sought an order "determining the Non-Compete Agreements to be unenforceable, unreasonable or, otherwise determining and adjudicating the rights, obligations and restrictions of the parties herein."

Schneider's filed its answer on August 15, 2013, generally denying Gaver's allegations. Schneider's stated in its answer that it admitted that "the Non-Compete Agreements . . . 'are not customer specific' and denie[d] the remaining averments in paragraph 6 [of Gaver's amended complaint]."

At the bench trial, Bruce Schneider, as president of Schneider's, testified that the profit-sharing documents do not require that employees execute the noncompete agreements. However, he testified as follows:

> [Gaver's attorney:] Why did you ask . . . Gaver to sign the 2008 non-compete agreement?
>
> A. So that he could receive the funds for the profit sharing.
>
> . . . .
>
> [Gaver's attorney:] Who prohibited . . . Gaver from receiving any funds in the profit sharing plan if he failed to sign the 2008 agreement?
>
> A. No one.
>
> Q. So why was it that he was required to sign the 2008 agreement?
>
> A. Because when we first established this profit sharing program it was to take the profits from the corporation and share it with the employees and then in return they sign an agreement stating that they will not take the money and compete against me in a business because I've contributed a large sum of money to them.

Bruce Schneider further testified that he sought legal advice and that a lawyer drafted the initial noncompete agreement. In answer to the question, "[H]ave [the employees] all signed a non-compete agreement?" Bruce Schneider answered, "Yes."

After trial, the district court filed its order on October 18, 2013, in which it determined that the 2003 and 2008 agreements were invalid and unenforceable. Citing *Aon Consulting v. Midlands Fin. Benefits*, 275 Neb. 642, 748 N.W.2d 626 (2008), and *Moore v. Eggers Consulting Co.*, 252 Neb. 396, 562 N.W.2d 534 (1997) (superseded by statute on other grounds as stated in *Coffey v. Planet Group*, 287 Neb. 834, 845 N.W.2d 255 (2014)), the district court stated that an employer has a legitimate business interest in protection against a former employee's competition by improper and unfair means, but that an employer is not entitled to protection against ordinary competition from a former employee. The court stated that the restrictive language of the 2003 and 2008 agreements was not limited to Schneider's customers with whom Gaver did business and had personal contacts, or even to Schneider's customers generally. Because the restrictive language in the agreements was not limited to those customers with whom Gaver actually did business or had personal contacts, the district court determined that the scope of the noncompete agreements was overly broad. In particular, the district court determined that Schneider's was attempting to prevent Gaver from engaging in ordinary competition with Schneider's as the owner of his own business, not just unfair competition. Accordingly, the district court stated that "the scope of the noncompete provisions are greater than reasonably necessary to protect Schneider's legitimate interest and are, as such, unreasonable and unenforceable." The district court granted declaratory judgment in favor of Gaver and against Schneider's.

Schneider's appeals.

## ASSIGNMENT OF ERROR

Schneider's claims that the district court erred when it determined that the noncompete agreements were unenforceable under Nebraska law.

## STANDARDS OF REVIEW

[1] When a declaratory judgment action presents a question of law, an appellate court decides the question independently of the conclusion reached by the trial court. *Vlach v. Vlach*, 286 Neb. 141, 835 N.W.2d 72 (2013).

[2] The interpretation of a contract is a question of law, in connection with which an appellate court has an obligation to reach its conclusions independently of the determinations made by the court below. *Woodle v. Commonwealth Land Title Ins. Co.*, 287 Neb. 917, 844 N.W.2d 806 (2014).

## ANALYSIS

Schneider's claims that the district court erred when it determined that the noncompete agreements are unreasonable and unenforceable. Schneider's argues that the restrictions in the noncompete agreements are valid and enforceable because they are no greater than reasonably necessary to protect its legitimate business interest. We reject Schneider's argument and find no error in the ruling of the district court.

[3,4] We have long recognized that at common law, all contracts in restraint of trade are against public policy and void. *Securities Acceptance Corp. v. Brown*, 171 Neb. 406, 106 N.W.2d 456 (1960), *modified on denial of rehearing* 171 Neb. 701, 107 N.W.2d 540 (1961). Nebraska statutes are to the same effect. See, e.g., Neb. Rev. Stat. § 59-1603 (Reissue 2010) (stating that "[a]ny contract, combination, in the form of trust or otherwise, or conspiracy in restraint of trade or commerce shall be unlawful"). "However, while not favorites of the law, partial restraints are not deemed to be unenforcible when they are ancillary to a contract of employment and are apparently necessary to afford fair protection to the employer." *Securities Acceptance Corp. v. Brown*, 171 Neb. at 414, 106 N.W.2d at 462. Covenants not to compete, as partial restraints of trade, are enforceable if the covenants are reasonable. See *Boisen v. Petersen Flying Serv.*, 222 Neb. 239, 383 N.W.2d 29 (1986).

[5] This court has repeatedly stated that there are three considerations used to test the validity of a covenant not to compete. See *Vlasin v. Len Johnson & Co.*, 235 Neb. 450, 455

N.W.2d 772 (1990). Summarizing the three requirements, we have more recently stated that

> [i]n determining whether a covenant not to compete is valid, a court considers whether the restriction is (1) reasonable in the sense that it is not injurious to the public, (2) not greater than is reasonably necessary to protect the employer in some legitimate interest, and (3) not unduly harsh and oppressive on the employee.

*Aon Consulting v. Midlands Fin. Benefits*, 275 Neb. 642, 653, 748 N.W.2d 626, 638 (2008). We have suggested that it is often best to consider the second feature identified above and initially determine if the restraint is in aid of some legitimate interest of the employer. See *Boisen v. Petersen Flying Serv., supra*.

In the past, we have determined that covenants not to compete are valid and enforceable where they were reasonably limited to restricting the former employee from contacting customers with whom the former employee had had personal contact while employed by the former employer and where they contained reasonable temporal and geographical restrictions. See, *Professional Bus. Servs. v. Rosno*, 268 Neb. 99, 680 N.W.2d 176 (2004) (referring to whether restriction concerned former employer's clients with whom former employee had had personal contacts); *Mertz v. Pharmacists Mut. Ins. Co.*, 261 Neb. 704, 625 N.W.2d 197 (2001) (referring to whether restriction was limited to former employer's clients with whom former employee had had personal contacts); *Vlasin v. Len Johnson & Co., supra* (determining covenant not to compete was unreasonable because it was not limited to former employer's clients with whom former employee did business and had had personal contacts); *American Sec. Servs. v. Vodra*, 222 Neb. 480, 385 N.W.2d 73 (1986) (analyzing, inter alia, reasonableness of restrictive terms with respect to time and space); *Securities Acceptance Corp. v. Brown, supra* (stating, inter alia, that partial restraint of trade should be limited as to both time and space). In the foregoing cases, the covenants not to compete were included as part of an employment agreement and represent the common format by which covenants not to compete are presented.

However, in the past, we have been faced with determining the enforceability of provisions that are not contained in employment contracts. In analyzing the enforceability of these provisions, we have applied the same three reasonableness requirements that we apply in determining the enforceability of commonplace covenants not to compete. For example, in *Brockley v. Lozier Corp.*, 241 Neb. 449, 488 N.W.2d 556 (1992), we applied the three reasonableness requirements to a forfeiture-for-competition clause that was contained in a deferred compensation plan. The forfeiture-for-competition clause provided that if the employee's employment was terminated and then the employee did any act or engaged "'directly or indirectly, whether as owner, partner, officer, employee or otherwise, in the operation or management of any business which shall be in competition'" with the former employer, the former employee was to forfeit any unpaid deferred payments from the plan. *Id.* at 453, 488 N.W.2d at 560.

In *Brockley*, we recognized that the forfeiture-for-competition clause was not a conventional covenant not to compete, but we nevertheless stated that in order for the forfeiture-for-competition clause to be enforceable, it needed to be reasonable. We stated that "[w]e find that forfeitures of deferred compensation are enforceable, but that they will be treated in the same manner as covenants not to compete, and therefore, the conditions making the forfeitures enforceable must be reasonable." *Brockley*, 241 Neb. at 460, 488 N.W.2d at 563.

In *Brockley*, we adopted the view set forth by the Minnesota Supreme Court in *Harris v. Bolin*, 310 Minn. 391, 247 N.W.2d 600 (1976), which had stated that while other courts had

> "attempted to distinguish between covenants not to compete in employment contracts and the penalty imposed under profit sharing plans for competing, the purpose of both arrangements is the same; therefore, under the common law, such agreements should be enforced only when they are found to be reasonable in scope after balancing the interests of the employer and employee."

*Brockley v. Lozier Corp.*, 241 Neb. at 459, 488 N.W.2d at 563, quoting *Harris v. Bolin, supra*. See, similarly, *Food Fair*

*Stores v. Greeley*, 264 Md. 105, 285 A.2d 632 (1972) (applying reasonableness standard to restrictive covenant in pension plan). See, also, *Deming v. Nationwide Mut. Ins. Co.*, 279 Conn. 745, 905 A.2d 623 (2006) (summarizing collected cases considering variety of agreements and plans and variety of analyses used by various courts, and concluding that forfeiture provision for deferred compensation at issue was similar to covenant not to compete, therefore, restraint against competition and enforceable only if reasonable). Applying the three reasonableness requirements to the forfeiture-for-competition clause at issue in *Brockley*, we determined that the 4- to 5-year time restriction contained in the forfeiture-for-competition clause was of an unreasonably long duration and that therefore, the clause was unenforceable.

As another example, in *Polly v. Ray D. Hilderman & Co.*, 225 Neb. 662, 407 N.W.2d 751 (1987), we applied the three reasonableness requirements developed in the covenant not to compete area to a case involving a deferred bonus. In *Polly*, the contract between the former employer and former employee provided that if the former employee competed with the former employer within a certain area, "'all deferred bonus payments due [the former employee] shall forthwith terminate.'" 225 Neb. at 664, 407 N.W.2d at 754. We stated in *Polly* that it was unclear whether the agreement was a covenant not to compete, but we nevertheless applied the three reasonableness requirements developed in the covenant not to compete area and determined that the agreement was unreasonable.

The noncompete agreement at issue in this case is somewhat unusual and differs from a conventional covenant not to compete for at least three reasons. First, the noncompete agreement is not a part of an employment agreement. The language of the 2008 noncompete agreement states: "THIS AGREEMENT IS NOT AND SHALL NOT BE INTERPRETED AS AN EMPLOYMENT AGREEMENT . . . ." Second, the noncompete agreement makes reference to Schneider's profit-sharing plan. The noncompete agreement states that Schneider's "has established a Profit Sharing Plan for the benefit of [its] Employees" and that "in consideration

of the benefits accruing to both parties as a result of the above-mentioned Profit Sharing Plan," the parties agree to the terms of the noncompete agreement. Third, although the noncompete agreement attempts to restrict Gaver from establishing or having an ownership interest in a competing business, unlike many litigated covenants not to compete, the agreement permits Gaver to be employed by any of Schneider's competitors. The noncompete agreement provides: "THIS AGREEMENT IS NOT AND SHALL NOT BE INTERPRETED AS A RESTRICTION ON EMPLOYEE'S RIGHT TO BE EMPLOYEED [sic] IN A TRADE OR BUSINESS SIMILAR TO THE TRADE AND BUSINESS OWNED AND OPERATED BY EMPLOYED [sic]."

For completeness, we remark briefly on the fact that although the noncompete agreement refers to the profit-sharing plan, the noncompete agreement is a freestanding document which we interpret independently and is not integrated with the profit-sharing plan. See *Builders Supply Co. v. Czerwinski*, 275 Neb. 622, 748 N.W.2d 645 (2008) (discussing integration of documents). Further, the parties agree that Schneider's profit-sharing plan, which is not in the record, does not contain a noncompete provision arguably restraining trade. Thus, we interpret the noncompete agreement by reference to its terms, and as noted above, the interpretation of a contract is a question of law. See *Woodle v. Commonwealth Land Title Ins. Co.*, 287 Neb. 917, 844 N.W.2d 806 (2014).

Despite the fact that the noncompete agreement at issue in this case is somewhat unusual, we recognize that it shares a similar purpose with more commonplace covenants not to compete and other provisions partially restraining trade—namely to prevent Gaver from competing with Schneider's in certain ways. As we observed in *Brockley v. Lozier Corp.*, 241 Neb. 449, 488 N.W.2d 556 (1992), other courts have struggled with how to characterize challenged provisions, because the characterization determines the applicable standard by which these courts measure validity. See *Deming v. Nationwide Mut. Ins. Co.*, 279 Conn. 745, 905 A.2d 623 (2006) (discussing several characterizations of allegedly anticompetitive provisions and corresponding standard to be applied as to validity).

However, we do not believe it is necessary to resolve whether to characterize the challenged document as a restraint of trade, "restrictive covenant not to compete" or other partial restraint of trade, because we rely on our Nebraska precedent, and as we did in *Brockley v. Lozier Corp., supra*, and *Polly v. Ray D. Hilderman & Co.*, 225 Neb. 662, 407 N.W.2d 751 (1987), we logically extend the application of the three reasonableness requirements to determine whether the noncompete agreement at issue is valid and enforceable.

[6] In applying the three reasonableness requirements, we initially focus on the second requirement: Is the restriction greater than reasonably necessary to protect the employer in some legitimate interest? See *Boisen v. Petersen Flying Serv.*, 222 Neb. 239, 383 N.W.2d 29 (1986). We have previously enunciated the important principle, to wit: "An employer has a legitimate business interest in protection against a former employee's competition by improper and unfair means, but is not entitled to protection against ordinary competition from a former employee." *Aon Consulting v. Midlands Fin. Benefits*, 275 Neb. 642, 653, 748 N.W.2d 626, 638 (2008). See, also, *Chambers-Dobson, Inc. v. Squier*, 238 Neb. 748, 759, 472 N.W.2d 391, 399 (1991) (quoting *Boisen* and stating that "'[a] covenant not to compete, as a partial restraint of trade, is available to prevent unfair competition by a former employee but is not available to shield an employer against ordinary competition'"). We have further observed that "'[a] restraint on the employee is illegal when its purpose is the prevention of competition, except when the methods of competition to be prevented are methods commonly regarded as improper and unfair.'" *Boisen v. Petersen Flying Serv.*, 222 Neb. at 245, 383 N.W.2d at 33, quoting 6A Arthur Linton Corbin, Corbin on Contracts § 1394 (1962). This principle is applicable to the instant case.

We have identified legitimate protectable business interests as including employer's goodwill, confidential information, and trade secrets. See *Boisen v. Petersen Flying Serv., supra*. It has been stated:

> Legitimate interests of an employer which may be protected from competition include: the employer's trade

secrets which have been communicated to the employee during the course of employment; confidential information communicated by the employer to the employee, but not involving trade secrets, such as information on a unique business method; an employee's special influence over the employer's customers, obtained during the course of employment; contacts developed during the employment; and the employer business's development of goodwill.

54A Am. Jur. 2d *Monopolies and Restraints of Trade* § 906 at 208 (2009).

[7-9] Regarding an employer's goodwill, we have stated:

To distinguish between "ordinary competition" and "unfair competition," we have focused on an employee's opportunity to appropriate the employer's goodwill by initiating personal contacts with the employer's customers. Where an employee has substantial personal contacts with the employer's customers, develops goodwill with such customers, and siphons away the goodwill under circumstances where the goodwill properly belongs to the employer, the employee's resultant competition is unfair and the employer has a legitimate need for protection against the employee's competition.

*Aon Consulting v. Midlands Fin. Benefits*, 275 Neb. at 653, 748 N.W.2d at 638. See, also, *Mertz v. Pharmacists Mut. Ins. Co.*, 261 Neb. 704, 625 N.W.2d 197 (2001); *Moore v. Eggers Consulting Co.*, 252 Neb. 396, 562 N.W.2d 534 (1997) (superseded by statute on other grounds as stated in *Coffey v. Planet Group*, 287 Neb. 834, 845 N.W.2d 255 (2014)). We have also recognized that an employer has a legitimate need to curb or prevent competitive endeavors by a former employee who has acquired confidential information or trade secrets pertaining to the employer's business operations. See, *Brockley v. Lozier Corp.*, 241 Neb. 449, 488 N.W.2d 556 (1992); *Boisen v. Petersen Flying Serv., supra*.

[10,11] Unlike the areas of goodwill, confidential information, and trade secrets, an employer does not ordinarily have a legitimate business interest in the postemployment preclusion

of an employee's use of some general skill. *Moore v. Eggers Consulting Co., supra*. We have stated that

> "[a] line must be drawn between the general skills and knowledge of the trade and information that is peculiar to the employer's business." Restatement (Second) of Contracts § 188, Comment *g*. at 45 (1981). Ordinarily, an employer has no legitimate business interest in post-employment prevention of an employee's use of some general skill or training acquired while working for the employer, although such on-the-job acquisition of general knowledge, skill, or facility may make the employee an effective competitor for the former employer.

*Boisen v. Petersen Flying Serv.*, 222 Neb. 239, 246-47, 383 N.W.2d 29, 34 (1986). In this regard, we have long observed that the law does not look with favor upon restrictions against competition, and therefore, an agreement which limits the right of a person to engage in a business or occupation will be strictly construed. *Securities Acceptance Corp. v. Brown*, 171 Neb. 406, 106 N.W.2d 456 (1960), *modified on denial of rehearing* 171 Neb. 701, 107 N.W.2d 540 (1961).

In *Boisen*, we determined that the former employer, an aerial spraying business, had not shown any special circumstance affecting a legitimate business interest to be protected by the challenged covenant not to compete. In *Boisen*, the covenant not to compete generally provided that when the former employee left his employment for any reason, he could not work for one of the employer's competitors or own his own competing business. Specifically, the contract stated that the former employee

> "shall not enter any occupation or employment, whether working for someone else or as a self-employed person, as owner, operator, employee, salesman, representative, pilot, instructor, advisor or consultant in, with or to any business which is in competition with any business presently performed or performed at any time during the employment of employee, by [the former employer], within a radius of 50 miles of Minden, Kearney County, Nebraska, for a period for 10 years from the date of this

agreement, or from the date such employee shall leave the employment of employer, which ever is later."

*Boisen v. Petersen Flying Serv.*, 222 Neb. at 242, 383 N.W.2d at 31.

In analyzing the reasonableness of the covenant not to compete in *Boisen*, we observed that the record showed: the former employee had no personal and business-based contact with customers or prospective customers of the former employer; the former employee was not exposed to, and did not acquire, confidential information accumulated by the former employer regarding its customers or potential customers; the on-the-job training and knowledge acquired by the former employee was no different from that which he would have received from another employer engaged in the same business; and the former employer had no trade secrets, such as a significantly different technique unknown to competitors or a unique and advantageous method to conducts its business. We determined that

> [r]educed to its rudiments, [the former employer's] objective in the covenant not to compete is prevention of prospective competition consequent to another aerial spraying business' serving agricultural customers and, perhaps, ultimately causing a reduction of revenue due to competitive prices or fewer customers, available or served. A covenant not to compete, as a partial restraint of trade, is available to prevent unfair competition by a former employee but is not available to shield an employer against ordinary competition. Under the circumstances we conclude that the questioned covenant not to compete does not protect "some legitimate business interest" of [the former employer] and is, therefore, invalid and unenforceable.

*Boisen v. Petersen Flying Serv.*, 222 Neb. 239, 247-48, 383 N.W.2d 29, 34-35 (1986).

As in *Boisen*, the record in this case shows that Schneider's has not demonstrated any special circumstances affecting a legitimate business interest to be protected by the noncompete agreement. There is no evidence that Gaver had any personal and business-based contact with customers or prospective

customers of Schneider's. Referring to the record, Gaver was not exposed to, and did not acquire, confidential information accumulated by Schneider's regarding its customers or potential customers, such as customer lists. There is no evidence that the on-the-job training and knowledge acquired by Gaver was any different from that which would have been received from another employer engaged in the business of automotive repairs and sales. And the record contains no evidence that Schneider's had any trade secrets regarding automotive repairs and sales.

In its appellate brief, Schneider's concedes that the purpose of the noncompete agreements was not to protect Schneider's goodwill, which, as explained above, is a recognized protectable interest. Instead, Schneider's asserts that its objective in securing the noncompete agreements was to ensure that any money distributed to Gaver from the profit-sharing plan would not later be used to establish or fund a competing business. Schneider's identifies its business interest as its "interest in preventing its earnings from directly funding a competitor." Brief for appellant at 17. In support of this assertion, Schneider's points to the paragraph in the noncompete agreement that provides "[w]hereas, Employer desires to insure [sic] that the benefits of said Profit Sharing Plan are not used by Employee to the detriment of the Employer."

We have not previously recognized a restriction on the use of earnings previously distributed, which are thereafter intended to fund the creation of the former employee's competing business, as a legitimate protectable business interest of the employer. And we are not inclined to recognize such restriction as legitimate in this case. As stated above, a covenant not to compete is available to prevent unfair competition by a former employee but is not available to shield an employer against ordinary competition. See, *Chambers-Dobson, Inc. v. Squier*, 238 Neb. 748, 472 N.W.2d 391 (1991); *Boisen v. Petersen Flying Serv., supra*. By attempting to restrict Gaver from opening or having an ownership interest in a competing business not coupled with a recognized protectable interest, Schneider's is attempting to prevent ordinary competition by a former employee, not unfair competition.

The noncompete agreement does not protect a legitimate business interest of Schneider's, such as its goodwill, confidential information, or trade secrets, but, rather, it seeks to prevent competition in general by restricting the manner in which Gaver applies funds he has already earned and received. That is, such funds have been earned and are not a gratuity, see *Halpin v. Nebraska State Patrolmen's Retirement System*, 211 Neb. 892, 320 N.W.2d 910 (1982) (discussing funds that are not gratuities), and they are not payments over which an employer retains some distributive control, see *Food Fair Stores v. Greeley*, 264 Md. 105, 285 A.2d 632 (1972) (illustrating that rules of incentive bonus retirement plan provided that funds can be withheld until former employee turns age 65). The anti-ownership restrictive language in the noncompete agreement directed to the use of funds already earned and received is not directed at a protectable legitimate business interest, and it is greater than reasonably necessary to protect the recognized interests of the employer. We therefore conclude that the noncompete agreement is invalid and unenforceable.

Notwithstanding the unacceptable breadth of the restrictions of the noncompete agreement, Schneider's nevertheless contends that the noncompete agreement is reasonable and should be enforceable, because it explicitly allows Gaver to be employed by Schneider's competitors. While it is correct that Gaver may be employed by Schneider's competitors, this does not save the noncompete agreement. The noncompete agreement contains a broad restriction prohibiting Gaver from "establish[ing] or open[ing] any trade business similar to the business owned and operated by Employer or in any manner become interested, directly or indirectly, either as an owner, partner, agent, stockholder, officer or otherwise, in any such business or trade." Indeed, the anti-ownership restriction is expanded by prohibiting the enumerated ownership interests "or otherwise." In this regard, the Court of Appeals of Maryland has stated that "'"[t]he right to labor or use one's skill, talents, or experience for one's own benefit, or furnish them to another for compensation, is a natural and

inherent right of the individual . . ." . . . .'" *Food Fair Stores v. Greeley*, 264 Md. at 116, 285 A.2d at 638, quoting *Ruhl v. Bartlett Tree Co.*, 245 Md. 118, 225 A.2d 288 (1967). We agree with other courts which have concluded not to enforce restrictive covenants if under all the circumstances, the provision is unduly restrictive of the employee's freedom. Limiting the creation of a business is a questionable restriction. When coupled with an attempt to prohibit the former employee's use of funds already earned and received, the limitations must fail. The noncompete agreement as written is an attempt to prevent ordinary competition, not improper or unjust competition, and we reject Schneider's arguments to the contrary.

[12] It is not the function of the courts to reform unreasonable covenants not to compete solely for the purpose of making them legally enforceable. *Moore v. Eggers Co.*, 252 Neb. 396, 562 N.W.2d 534 (1997) (superseded by statute on other grounds as stated in *Coffey v. Planet Group*, 287 Neb. 834, 845 N.W.2d 255 (2014)); *Vlasin v. Len Johnson & Co.*, 235 Neb. 450, 455 N.W.2d 772 (1990). We have determined above that the noncompete agreement in this case is unreasonable, and we do not reform it to make it enforceable.

## CONCLUSION

The challenged noncompete agreement is not directed at a protectable legitimate business interest, and it is greater than reasonably necessary to protect the legitimate interests of Schneider's. Therefore, the noncompete agreement is invalid and unenforceable and the district court did not err when it so determined.

AFFIRMED.